## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
GREGORY McLAURIN              :    Civ. No. 3:21CV00717(SALM)
                              :
v.                            :
                              :
OFFICER OTERO and             :    August 1, 2022
OFFICER STEIN                 :
                              :
------------------------------x
```

### RULING ON DEFENDANT OTERO'S EARLY
### MOTION FOR SUMMARY JUDGMENT [Doc. #51]

Plaintiff Gregory McLaurin, a sentenced inmate currently housed at Cheshire Correctional Institution in the custody of the Connecticut Department of Correction ("DOC"),[1] brings this action against Officer Otero and Officer Stein pursuant to 42 U.S.C. §1983.[2]

---

[1] The Court may take judicial notice of matters of public record. See, e.g., Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006); United States v. Rivera, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate location information); Ligon v. Doherty, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate location information). The Court takes judicial notice of the Connecticut DOC website, which reflects that McLaurin entered DOC custody on January 22, 2018, and was sentenced on September 26, 2019. See Connecticut State Department of Correction, Inmate Information, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=3 95129 (last visited August 1, 2022).

[2] Plaintiff's original Complaint (Doc. #1) and Motion to Amend (Doc. #16) brought claims against additional defendants. However, all other defendants have been dismissed from this matter. See Doc. #12 (Initial Review Order); Doc. #23 (Order on

Plaintiff's Amended Complaint is brought in five counts. See Doc. #32. Defendant Otero has filed an early motion for summary judgment as to Count Three of the Amended Complaint, "seeking judgment to enter in his favor as to the plaintiff's First Amendment retaliation claim ... on the grounds that plaintiff failed to exhaust his administrative remedies prior to commencing suit as required by the Prison Litigation Reform Act ('PLRA')." Doc. #51 at 1. Plaintiff filed a response to defendant Otero's motion on March 28, 2022. See Doc. #56. For the reasons set forth below, defendant Otero's motion for partial summary judgment as to Count Three [**Doc. #51**] is **GRANTED**.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed his original Complaint on May 26, 2021. See Doc. #1. Plaintiff's original Complaint related to events that occurred while he was incarcerated at Northern Correctional Institution ("Northern"), and named Warden Rodger Bowles; Captain Brane Blackstock; Officer Otero; and Officer Stein in both their individual and official capacities. See id. at 1.

Plaintiff's original Complaint alleged that on February 1, 2021, he was "was abused & assaulted by Officer Otero & Stein." Id. at 5. Plaintiff's original Complaint asserted that on

---

Motion to Amend). Defendants Otero and Stein are the only named defendants in the operative Amended Complaint. See Doc. #32.

February 19, 2021:

> Officer Otero began harassing me on Second shift. I
> became mentally disturbed, and requested to speak with
> shift manage Cpt. Perez and Mental Health. Cpt. Perez
> told me he was going to move Officer Otero out the block.
> And to speak to Cpt. Blackstock about a permenate keep
> separate restraining order. On February 19, 2021 I wrote
> Cpt. Blackstock and Warden Bowles about Officer Otero
> Harrassing me, and How it Had an Adverse Effect on Mental
> Health.

Id. at 7 (sic).

Plaintiff's original Complaint alleged that "[o]n March 8, 2021 Officer Otero continued to harrass me, to retaliate about my previous request about his harrassment." Id. (sic).

On September 10, 2021, Judge Alfred V. Covello, then the presiding Judge in this matter, conducted an Initial Review of plaintiff's original Complaint. See Doc. #12. Judge Covello considered plaintiff's claims "for violation of his First, Eighth, and Fourteenth Amendment rights." Id. at 1 (footnote omitted). Although the original Complaint did not expressly invoke the First Amendment, the Court "construe[d] McLaurin's allegations as asserting a claim for First Amendment retaliation[,]" id. at 1 n.2, in light of plaintiff's assertions that: (1) "Otero lied about McLaurin's conduct that resulted in a false disciplinary report for assault charges[;]" and (2) "Otero harassed him on March 8, 2021, after McLaurin wrote to warden Bowles and captain Blackstock about officer Otero's

harassment and its adverse effects on his mental health." Id. at 14 (sic).

The Initial Review Order permitted certain claims to proceed against Officer Otero and Officer Stein, in their individual capacities for money damages, but dismissed plaintiff's First Amendment retaliation claims without prejudice. See id. at 17. Specifically, the Court found that the Complaint failed to state a cognizable First Amendment retaliation claim based upon Otero's allegedly false disciplinary charges against plaintiff because the original Complaint failed to assert "facts showing that [plaintiff] engaged in any protected speech or conduct that motivated Otero to make false disciplinary charges against him." Id. at 14. The Court further found that the Complaint did not state a cognizable First Amendment retaliation claim based upon plaintiff's allegations that Otero harassed plaintiff for complaining to Warden Bowles because plaintiff failed to assert "specific facts showing that [plaintiff] was subjected to adverse action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." Id. at 15 (citation and quotation marks omitted).

This matter was transferred to the undersigned on October 15, 2021. See Doc. #15.

On October 27, 2021, plaintiff filed a motion to amend his

Complaint. See Doc. #16. In addition to the defendants named in
the original Complaint, the proposed Amended Complaint sought to
add claims against five additional defendants -- Deputy Warden
Washington, Darren Chevralier, Angel Quiros, Dustin Schold, and
Carson Wright -- in both their individual and official
capacities. See Doc. #16-1 at 1, 2. The proposed Amended
Complaint asserted claims for:

> Declatory, injunctive and monetary relief pursuant 42
> U.S.C. §1983\1982 alleging excessive force, cruel and
> unusual conditions of confinement, discrimination as
> well as deliberate indifference to serious
> medical/mental health needs in violation of the
> plaintiffs 8th, 14th and 1st amendment rights ... the
> plaintiff also alleges the torts of negligence, assault
> and battery in addition to intentional infliction of
> emotional distress[.]

Id. at 2 (sic) (capitalization altered). The body of the
proposed Amended Complaint asserted the following "Cause for
Action": (1) "Excessive Force\Assault and Battery"; (2) "Cruel
and Unusual Conditions of Confinement"; (3) "Deliberate
Indifference to Serious Medical and Mental Health
Needs\Negligence"; (4) "Retaliation"; and (5) "Failure to
Protect[.]" Id. at 3-7 (sic).

Plaintiff's proposed Amended Complaint provided additional
details regarding plaintiff's previously-dismissed First
Amendment retaliation claim. Specifically, plaintiff's proposed
Amended Complaint alleged:

As a direct and proximate result of the plaintiff

> engaging in the above state constitutionally protected
> acts to exhaust his administrative remedies defendant
> Otero repetitively began to criminally threaten to
> murder the plaintiff, have him murdered if he could not
> personally accomplish this and proceeded to verbally
> abuse and threaten the plaintiff after discovering the
> plaintiff wrote defendant Bowles (the warden) informing
> him of his misconduct[.]

Id. at 6 (sic) (capitalization altered).

On December 2, 2021, the Court issued an order granting, in part, plaintiff's motion to amend his complaint. See Doc. #23. In doing so, the Court permitted this action to proceed on the following claims:

> (1) Eighth Amendment excessive force claims against Officer Otero and Officer Stein in their individual capacities.
>
> (2) Assault and battery claims against Officer Otero and Officer Stein in their individual capacities.
>
> (3) First Amendment retaliation claim against Officer Otero, in his individual capacity, related to Officer Otero's threats to "murder" plaintiff for writing to Warden Bowles about Officer Otero's alleged misconduct.

Id. at 20.

On December 8, 2021, the Court entered an order appointing counsel for plaintiff "for the limited purpose of filing a streamlined amended complaint that includes only those claims, and the facts relevant thereto, that have been allowed to proceed in the Initial Review Order on the original Complaint (Doc. #12) and the Ruling on the Motion to Amend (Doc. #23)." Doc. #28.

On December 23, 2021, plaintiff filed an Amended Complaint in this matter, through appointed counsel. See Doc. #32. Plaintiff's Amended Complaint asserts that he was assaulted by Officer Otero and Officer Stein while he was incarcerated at Northern. See id. Count Three of plaintiff's Amended Complaint alleges, in part:

> 17.   Subsequent to [the assault], the Plaintiff wrote to Warden Bowles concerning the [assault].
>
> 18.   Said letter constituted protected First Amendment speech.
>
> 19.   Officer Otero learned of the plaintiff's letter to Warden Bowles.
>
> 20.   As a result of learning of Plaintiff's writing, Officer Otero threatened to murder the Plaintiff or to have the Plaintiff murdered all in violation of Plaintiff's First Amendment rights under the US Constitution, including as incorporated under the Fourteenth Amendment.

Id. at 5.

On February 4, 2022, defendants filed a Notice stating their intention to file an early dispositive motion relating to plaintiff's failure to exhaust his administrative remedies "as to the plaintiff's First Amendment retaliation claim[.]" Doc. #45 at 1.

Apparently in response to this Notice, plaintiff filed an "Answer to Exhaustion Defense[.]" Doc. #47 at 2. Plaintiff's filing asserts that he "made every attempt to seek formal resolution & exhausted my admin remedies." Id. As relevant here,

plaintiff contends: "The plaintiff claims that even thou he did
not use the word retaliation in the grievance, that he described
the foremention action, and allerted the staff to Officer Ottero
heinous actions, and tried to reach a formal resolution at every
level." Id. at 3 (sic) (capitalization altered).

On February 25, 2022, defendant Otero filed the instant
motion, "seeking judgment to enter in his favor as to the
plaintiff's First Amendment retaliation claim (Count III of
Amended Complaint, (ECF No. 32)) on the grounds that the
plaintiff failed to exhaust his administrative remedies prior to
commencing suit as required by the Prison Litigation Reform Act
('PLRA')." Doc. #51 at 1. For the reasons set forth herein,
defendant Otero's motion for summary judgment as to Count Three
of the Amended Complaint is **GRANTED.**

## II.  <u>LEGAL STANDARD</u>

The standards governing summary judgment are well-
settled. Summary judgment is appropriate only "if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits ...
show that there is no genuine issue as to any material
fact and that the moving party is entitled to a judgment
as a matter of law." Fed. R. Civ. P. 56(c)[.]

Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir.
2002). Summary judgment is proper if, after discovery, the
nonmoving party "has failed to make a sufficient showing on an
essential element of [his] case with respect to which [he] has
the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317,

323 (1986) (alterations added).

"The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." Marvel Characters, 310 F.3d at 286. "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

In deciding a motion for summary judgment, the Court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citation and quotation marks omitted). "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home Assur. Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006) (citation and quotation marks omitted).

"[I]n a pro se case, the court must view the submissions by a more lenient standard than that accorded to formal pleadings drafted by lawyers. ... This liberal standard, however, does not excuse a pro se litigant from following the procedural formalities of summary judgment." Govan v. Campbell, 289 F.

Supp. 2d 289, 295 (N.D.N.Y. 2003) (citations and quotation marks omitted). A plaintiff's "pro se status d[oes] not eliminate his obligation to support his claims with some evidence to survive summary judgment." Nguedi v. Fed. Rsrv. Bank of N.Y., 813 F. App'x 616, 618 (2d Cir.), cert. denied, 141 S. Ct. 825 (2020). "[A] pro se party's bald assertion, completely unsupported by evidence is not sufficient to overcome a motion for summary judgment." Hamilton v. Gen. Motors Hourly-Rate Emp. Pension Plan, 101 F. Supp. 3d 202, 209 (N.D.N.Y. 2015) (citation and quotation marks omitted).

Pursuant to the District of Connecticut Local Rules, "[a] party opposing a motion for summary judgment shall file and serve with the opposition papers a document entitled 'Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment,' ... admitting or denying" each fact asserted by the moving party in its Statement of Material Facts. D. Conn. L. Civ. R. 56(a)(2)(i) (emphasis added). When a party fails to deny a fact asserted in the moving party's Local Rule 56(a)(1) statement, that fact will be deemed admitted if it is "supported by the evidence[.]" D. Conn. L. Civ. R. 56(a)(1).

## III. **FACTUAL BACKGROUND**

The following facts are derived from the parties' submissions pursuant to Local Rule 56(a) and the affidavits, declarations, and exhibits attached thereto.

As required, defendant Otero provided the Local Rule 56(b) Notice to Self-Represented Litigant Regarding Summary Judgment, a copy of Local Rule 56, and a copy of Federal Rule 56, to plaintiff in conjunction with his motion for summary judgment. See Doc. #51-3. Despite this Notice, which explicitly informed plaintiff that he was required to "respond to specific facts the movant claims are undisputed (see Local Rule 56(a)(2))" and to "support [his] claims with specific references to evidence[,]" id. at 2, plaintiff did not file a Rule 56(a)(2) Statement. The Court drew plaintiff's attention to the Notice in a March 3, 2022, Order. See Doc. #53 ("Plaintiff is advised to carefully review defendant Otero's motion, including the Statement of Material Facts and the Notice to Self-Represented Litigant attached to the motion. ... As the Notice to Self-Represented Litigant advises plaintiff, defendant's motion for summary judgment may be granted and Count Three may be dismissed without further notice if plaintiff fails to file an adequate response to the motion, and if the motion demonstrates that defendant Otero is entitled to judgment on Count Three as a matter of law."). The Court specifically advised plaintiff: "Plaintiff must respond to each material fact asserted by defendant Otero, or that fact may be deemed admitted." Id.

Plaintiff was provided ample notice of the requirement to file a Local Rule 56(a)(2) statement with his response to

defendant's motion for summary judgment. See Cusamano v. Sobek, 604 F. Supp. 2d 416, 426 (N.D.N.Y. 2009) ("[T]he Court extends special solicitude to the pro se litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment." (emphasis added)); Wu v. Nat'l Geospatial Intel. Agency, No. 3:14CV01603(DJS), 2017 WL 923906, at *2 (D. Conn. Mar. 8, 2017) (noting that the self-represented plaintiff "was advised on two separate occasions of the need to comply with Local Rule 56 and specifically of the need to file a Local Rule 56(a)2 Statement" but had failed to do so, and therefore deeming the statements in the movant's Statement of Undisputed Facts admitted).

Therefore, "to the extent that [defendant's] factual assertions are properly supported by the evidence the Court will deem those assertions admitted." Wu, 2017 WL 923906, at *2 (emphasis added); see also Otero v. Purdy, No. 3:19CV01688(VLB), 2021 WL 4263363, at *10 (D. Conn. Sept. 20, 2021) ("deem[ing] Defendants' 56(a)1 statements to be admitted as they are properly supported by the evidence[]" and the self-represented plaintiff did not file a Local Rule 56(a)(2) statement). However, to the extent that a fact is refuted by plaintiff's response to defendant's motion for summary judgment, the Court will consider that fact disputed. See Wilks v. Elizabeth Arden, Inc., 507 F. Supp. 2d 179, 185-86 (D. Conn. 2007) ("For the

purposes of this motion, however, the court shall deem admitted all facts set forth in the Defendant's compliant Local Rule 56(a)(1) Statement that are supported by the evidence and not refuted by the Plaintiff's opposition memorandum."). Accordingly, the Court will deem all facts in defendant's Local Rule 56(a)(1) statement that are supported by the evidence admitted, unless plaintiff's submissions directly contradict them.

The Court has reviewed the material facts identified by defendant Otero, in conjunction with plaintiff's submissions. The Court finds that no material fact is disputed by plaintiff's submissions. To the contrary, plaintiff's memorandum in opposition to the motion for summary judgment attaches copies of A.D. 9.6, his administrative grievances, and the DOC's rulings, which expressly confirm the narrative detailed in defendant's Statement of Material Facts. See generally Doc. #56. Accordingly, the Court cites defendant's Statement of Material Facts, see Doc. #51-2, as well as the attachments to plaintiff's memorandum confirming that plaintiff agrees with each material fact. See Doc. #56.

### A.   DOC Administrative Remedy Procedure

"The administrative remedy or grievance procedure established by DOC for all issues, other than complaints related to medical care, is set forth in Administrative Directive ('AD')

9.6, 'Inmate Administrative Remedies.'" Doc. #51-2 at 1-2; <u>see</u> <u>also</u> Doc. #56 at 42.[3]

Under A.D. 9.6, an inmate is required "to first seek informal resolution of his issues, in writing, utilizing an Inmate Request Form, prior to filing a formal grievance." Doc. #51-2 at 2; <u>see also</u> Doc. #56 at 47. Thereafter, "[i]f the inmate is not satisfied with the informal resolution response or no response is provided, he must file a Level-1 grievance and attach documentation of his informal resolution attempts[.]" Doc. #51-2 at 2; <u>see also</u> Doc. #56 at 47. This grievance "must be filed within 30 calendar days of the occurrence or discovery of the cause of the Grievance[,]" Doc. #51-8 at 7; <u>see also</u> Doc. #56 at 47, "and the appropriate correctional official has 30 business days to respond." Doc. #51-2 at 2; <u>see also</u> Doc. #56 at 48. "[T]he time limit for a response to a grievance may be extended by up to 15 business days with notice to the grievant of the extension." Doc. #51-2 at 3; <u>see also</u> Doc. #56 at 44.

"If an inmate is not satisfied with the response to his Level-1 grievance, or no response is provided within the 30

---

[3] A new version of A.D. 9.6 took effect while plaintiff was in the process of grieving his First Amendment retaliation claim. <u>Compare</u> Doc. #56 at 27 <u>with</u> Doc. #56 at 42. Defendant Otero asserts, and the Court agrees, that the "relevant provisions of AD 9.6 as they relate to the plaintiff's grievances remain unchanged[.]" Doc. #51-2 at 2 n.1. Accordingly, the Court cites the current version of A.D. 9.6 throughout this Ruling.

days, the inmate may submit a Level-2 appeal within 5 days after receipt of the response, or if no response is provided, within 65 calendar days from the date that the initial Level-1 grievance was filed." Doc. #51-2 at 2-3; see also Doc. #56 at 48. This is the "final level of appeal for all grievances except those that challenge department policy, challenge the integrity of the grievance procedure, or exceed the 30-day limit for a Level-2 response." Doc. #51-2 at 3; see also Doc. #56 at 49.

**B.   Exhaustion of First Amendment Retaliation Claim**

Plaintiff filed a Level-1 grievance relating to his First Amendment retaliation claim on April 5, 2021. See Doc. #51-2 at 3; see also Doc. #56 at 12-13. On May 14, 2021, "a notice of time extension was issued to the plaintiff regarding his Level-1 grievance ... indicating that the time for a response to his grievance was being extended by 15 business days." Doc. #51-2 at 3; see also Doc. #56 at 14.

Plaintiff's "Level-1 grievance ... was denied on May 24, 2021." Doc. #51-2 at 3; see also Doc. #56 at 13. Plaintiff filed the instant action, which asserted a claim for retaliation, on May 26, 2021. See Doc. #1 at 7 ("Officer Otero continued to harrass me, to retaliate about my previous request about his harrassment." (sic)).

"On June 7, 2021, the plaintiff filed a Level-2 appeal of the denial of his Level-1 grievance[.]" Doc. #51-2 at 4; see

<u>also</u> Doc. #56 at 16.[4] Plaintiff's Level-2 appeal was denied on June 17, 2021. <u>See</u> Doc. #51-2 at 4; <u>see</u> <u>also</u> Doc. #56 at 16. Given the nature of plaintiff's grievance, the DOC determined that "[t]his decision is not subject to further appeal." Doc. #51-5 at 7; <u>see</u> <u>also</u> Doc. #56 at 16. Consequently, plaintiff completed the DOC's administrative remedies procedure on "June 17, 2021, when his Level-2 appeal was denied." Doc. #51-2 at 4; <u>see</u> <u>also</u> Doc. #56 at 4.

## IV. <u>DISCUSSION</u>

Defendant Otero seeks summary judgment as to plaintiff's First Amendment retaliation claim "on the grounds that the plaintiff failed to exhaust his administrative remedies prior to commencing suit as required by the [PLRA]." Doc. #51 at 1. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). "The Supreme Court has held that this provision requires an inmate to exhaust administrative remedies before filing any type of action

---

[4] Plaintiff's Level-2 appeal is dated June 4, 2021, and the form indicates that it was received on June 9, 2021. <u>See</u> Doc. #51-5 at 7; Doc. #56 at 16. This discrepancy does not affect the Court's analysis, because both dates fall <u>after</u> plaintiff filed his original Complaint in this case.

in federal court, regardless of whether the inmate may obtain
the specific relief he desires through the administrative
process." Medina v. Somers, 3:10CV00299(JBA), 2011 WL 2844301,
at *2 (D. Conn. July 14, 2011).

> A claim is not exhausted until the inmate complies with
> all administrative deadlines and procedures. See
> Woodford v. Ngo, 548 U.S. 81, 90 (2006). Informal efforts
> to put prison officials on notice of inmate concerns do
> not satisfy the exhaustion requirement. See Macias v.
> Zenk, 495 F.3d 37, 43 (2d Cir. 2007). ... In addition,
> the inmate must exhaust his administrative remedies for
> each claim he asserts in federal court. See Baldwin v.
> Arnone, No. 3:12CV00243(JCH), 2013 WL 628660, at *5 (D.
> Conn. Feb. 18, 2013).

Jones v. Johnson, No. 3:15CV01135(DJS), 2017 WL 1843692, at *3
(D. Conn. May 8, 2017).

To meet this requirement, "administrative remedies must be
exhausted prior to filing ... [the] initial complaint[.]
[E]xhaustion during the pendency of the federal suit is
insufficient[.]" Girard v. Chuttey, 826 F. App'x 41, 45 (2d Cir.
2020); see also Stimpson v. Comm'r Corr. Off., No.
3:16CV00520(SRU), 2017 WL 326314, at *2 (D. Conn. Jan. 23, 2017)
("[C]ompletion of the exhaustion process after a federal action
has been filed does not satisfy the exhaustion requirement.").
"[P]ost-exhaustion amendment of pleadings filed originally
before exhaustion to reflect that exhaustion has become complete
cannot cure the original nonexhaustion defect." Kasiem v. Switz,
756 F. Supp. 2d 570, 575 (S.D.N.Y. 2010).

Plaintiff does not contend that he completely exhausted his administrative remedies as to this claim before he filed suit on May 26, 2021. See Doc. #56 at 4 ("The plaintiff exhausted his Admin. Remedies on June 17, 2021[.]"); see also Johnson v. Rowley, 569 F.3d 40, 45 (2d Cir. 2009) ("In order to exhaust a claim, prisoners must complete the administrative review process in accordance with the applicable procedural rules[,]" which are "defined not by the PLRA, but by the prison grievance process itself." (citation and quotation marks omitted)). Nor does plaintiff argue that the DOC's administrative remedies were unavailable to him. See Girard, 826 F. App'x at 44 ("Prisoners are exempt from the exhaustion requirement only when administrative remedies are unavailable." (citation and quotation marks omitted)). Rather, plaintiff asserts that he has properly exhausted his First Amendment retaliation claim because he completed the exhaustion process before filing his Amended Complaint. See Doc. #56. The Court disagrees.

The PLRA "requires an inmate to exhaust all available administrative remedies before bringing a civil suit with respect to prison conditions." Simms v. Grady, No. 3:20CV01719(SALM), 2022 WL 1094077, at *4 (D. Conn. Apr. 12, 2022) (emphasis added) (citation and quotation marks omitted). As the Second Circuit has expressly held:

[T]he plain language of §1997e(a), providing that "[n]o action shall be brought ... until such administrative remedies as are available are exhausted," suggests that exhaustion prior to commencement of a §1983 action is mandated. See Nussle, 224 F.3d at 100-01 (noting that statutory text, "if clear and unambiguous on its face, is presumed to bear its plain meaning"). The Supreme Court instructs that "[w]here Congress specifically mandates, exhaustion is required." McCarthy v. Madigan, 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). We too have observed that §1997e(a) "requires exhaustion of available administrative remedies before inmate-plaintiffs may bring their federal claims to court at all." Nussle, 224 F.3d at 99 (emphases added); see also id. at 98 (describing §1997e(a) as "add[ing] teeth" to the exhaustion requirement). Subsequent exhaustion after suit is filed therefore is insufficient.

Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001) (emphases in original), overruled on other grounds by Porter v. Nussle, 534 U.S. 516 (2001).[5] While Neal was overruled on other grounds by Porter, the Second Circuit recently reaffirmed the validity of this aspect of Neal, holding again that "administrative remedies must be exhausted prior to filing of initial complaint and that exhaustion during the pendency of the federal suit is insufficient[.]" Girard, 826 F. App'x at 45 (citing Neal, 267 F.3d at 122-23). Plaintiff has failed to satisfy the PLRA's

_____

[5] The portion of Neal holding that "prison conditions" within the meaning of the PLRA are limited to "those aspects of prison life affecting the entire prison population," 267 F.3d at 119 (citation omitted), was overruled by Porter v. Nussle, 534 U.S. 516, 532 (2002), which held that the PLRA "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Id.

exhaustion requirement because he did not exhaust his First Amendment retaliation claim until <u>after</u> he brought this action.

Plaintiff's post-exhaustion amendment of his complaint does not "save" his claim. Courts within this Circuit have consistently held that "post-exhaustion amendment of pleadings filed originally before exhaustion to reflect that exhaustion has become complete cannot cure the original nonexhaustion defect." <u>Kasiem</u>, 756 F. Supp. 2d at 575; <u>see also</u>, <u>e.g.</u>, <u>Guillory v. Haywood</u>, No. 9:13CV01564(MAD), 2015 WL 268933, at *11 (N.D.N.Y. Jan. 21, 2015) ("[A] post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced."). This approach is consistent with the Second Circuit's decision in <u>Neal</u>, in which the Court affirmed the District Court's ruling that "because plaintiff failed to exhaust administrative remedies <u>before</u> filing his original complaint ... his claims could not go forward." <u>Neal</u>, 267 F.3d at 118.

The Court acknowledges that there appears to be a split of authority nationwide regarding whether the filing of an amended complaint can cure an exhaustion defect that existed at the time the original complaint was filed.[6] However, <u>Neal</u> remains the law of this Circuit, and this Court is bound to follow it.

_____

[6] <u>Compare</u> <u>Saddozai v. Davis</u>, 35 F.4th 705, 706 (9th Cir. 2022) ("A prisoner who has fully complied with the PLRA's exhaustion

The Court has carefully considered the Supreme Court's observation in Ramirez v. Collier, 142 S. Ct. 1264 (2022). There, the Court addressed an inmate's request that "his long-time pastor be allowed to pray with him and lay hands on him while he is being executed." Id. at 1272. In dicta, the Supreme Court briefly discussed whether a plaintiff's post-exhaustion amendment of his claims could cure an exhaustion defect that existed at the time the plaintiff's original complaint was filed. See id. at 1276; see also Cary Oil Co. v. MG Ref. & Mktg., Inc., 257 F. Supp. 2d 751, 765 (S.D.N.Y. 2003) (stating that dicta is "language that is unnecessary to the court's holding[]" (citation and quotation marks omitted)). In doing so, the Court noted:

> Respondents briefly argue that Ramirez failed to exhaust Texas's grievance process because he filed suit before prison officials ruled on his Step 2 grievance. It is true that prison officials did not decide that grievance until six days after Ramirez sued. But Ramirez filed an

requirement need not file an entirely new federal case simply because he had not exhausted when he filed his original federal complaint."); Garrett v. Wexford Health, 938 F.3d 69, 87 (3d Cir. 2019) ("Because [the Amended Complaint] relates back to the original complaint, the [Amended Complaint] cures the original [exhaustion] defect."); with Chambers v. Sood, 956 F.3d 979, 984-85 (7th Cir. 2020) (rejecting argument that amending complaint after exhaustion remedied failure to exhaust before the suit was filed because "the PLRA requires prisoners to exhaust administrative remedies before filing suit"); Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) ("Because [plaintiff's] attempt to amend or supplement his original complaint did not change the important historical fact: his administrative remedies were unexhausted when he filed his original complaint ... he cannot cure the exhaustion defect.").

>amended complaint that same day, and he also filed a
>second amended complaint after that. The original defect
>was arguably cured by those subsequent filings. <u>See</u>
><u>Rhodes v. Robinson</u>, 621 F.3d 1002, 1005 (9th Cir. 2010)
>('As a general rule, when a plaintiff files an amended
>complaint, the amended complaint supersedes the
>original, the latter being treated thereafter as non-
>existent.') (PLRA case). <u>In any event, we need not
>definitively resolve the issue as respondents failed to
>raise it below.</u>

<u>Ramirez</u>, 143 S.Ct at 1276 (citations to the record omitted)
(emphasis added).

The Court recognizes the deference owed to Supreme Court
<u>dicta</u>. <u>See</u> <u>United States v. Afriyie</u>, 27 F.4th 161, 171 (2d Cir.
2022) (A trial court is "obligated to accord great deference to
Supreme Court <u>dicta</u> ... especially where ... [the trial court
has] no precedent in [its] own Circuit to guide [it]." (citation
and quotation marks omitted)). However, "a suggestion that the
Supreme Court may favor [a particular interpretation], without
more, does not trump Second Circuit precedent." <u>Lefkowitz v.
McGraw-Hill Glob. Educ. Holdings, LLC</u>, 23 F. Supp. 3d 344, 357
n.11 (S.D.N.Y. 2014). <u>Neal</u>'s holding that a plaintiff must
exhaust his claims before filing his <u>initial</u> complaint "has
never been overruled by any decision of the Second Circuit or by
the Supreme Court ... [and thus] this Court is bound to follow
it." <u>Curry v. Mazzuca</u>, No. 02CV04477(JSR)(GWG), 2004 WL 2368013,
at *3 (S.D.N.Y. Oct. 22, 2004); <u>see</u> <u>also</u> <u>Price v. Tolbert</u>, No.
2:20CV00500(PAI), 2022 WL 1204803, at *7 (S.D. Ind. Apr. 22,

2022) ("The Court notes that the <u>Ramirez</u> used the qualifier 'arguably cured' and expressly stated that it 'need not definitively resolve the issue.' 142 S. Ct. at 1276. Under these circumstances, this Court is constrained by the Seventh Circuit's binding precedent as it currently exists." (sic)).

This Court adheres to the controlling precedent set forth in <u>Neal</u> as reaffirmed by <u>Girard</u>. This law is not only controlling, but also consistent with the PLRA's text and purpose. The plain language of the PLRA provides: "No action shall be <u>brought</u> with respect to prison conditions under ... Federal law by a prisoner confined in any ... correctional facility ... <u>until</u> such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a) (emphases added). This plain language of the PLRA supports the finding that post-exhaustion amendment of a complaint does not remedy the failure to exhaust claims before initiating the action. "Plaintiff 'brought' this action when he filed his initial complaint ... and was assigned a docket number. He did not 'commence' or 'institute' this action when he subsequently amended his complaint." <u>Prescott v. Annetts</u>, No. 09CV04435(CM), 2010 WL 3020023, at *4 (S.D.N.Y. July 22, 2010).

This interpretation comports with the purpose of the PLRA's exhaustion requirement. The Second Circuit has recognized that one "purpose of the PLRA is ... to afford corrections officials

time and opportunity to address complaints internally before allowing the initiation of a federal case." Johnson v. Killian, 680 F.3d 234, 238 (2d Cir. 2012) (citation and quotation marks omitted). Prison officials will be deprived of the opportunity to address such complaints before an action is initiated, however, if plaintiffs are not required to complete the internal exhaustion process before filing a complaint. Requiring inmates to complete the exhaustion process before initiating suit advances the PLRA's purpose because it provides prison officials with an opportunity to address a plaintiff's claims before they are forced to defend themselves in a federal action.

The Court concludes that Neal remains the binding law of this Circuit, and is consistent with the PLRA's text and purpose. Therefore, plaintiff's "post-exhaustion amendment of [his complaint] ... to reflect that exhaustion has become complete cannot cure [his] original nonexhaustion defect." Kasiem, 756 F. Supp. 2d at 575.

Plaintiff attempts to avoid the import of Neal by arguing that his retaliation claim was raised for the first time "in his Amended Complaint." Doc. #56 at 4. Plaintiff asserts that "as long as the new issues are exhausted before you try to add them to the case, you can amend your complaint to add them." Id.

Even if plaintiff's theory regarding new claims raised for the first time in an Amended Complaint were correct, plaintiff

expressly raised his retaliation claim in his original
Complaint. Plaintiff's original Complaint asserted: "On March 8,
2021 officer Otero continued to harrass me, to retaliate about
my previous request about his harrassment." Doc. #1 at 7 (sic)
(emphasis added). Based on this allegation, the Court construed
plaintiff's original Complaint as "asserting a claim for First
Amendment retaliation[.]" Doc. #12 at 1 n.2. The Court
determined, however, that "McLaurin's conclusory and generalized
allegations that he was subjected to harassment by Otero is not
sufficient to raise a plausible inference that such action would
deter an ordinary inmate from exercising his constitutional
rights." Id. at 15 (sic).

    In response to the Court's Initial Review Order, plaintiff
filed a Motion to Amend. See Doc. #16. The proposed Amended
Complaint attached to plaintiff's Motion to Amend again set
forth a retaliation claim against defendant Otero. See Doc. #16-
1 at 6. However, rather than asserting a new retaliation claim,
plaintiff's proposed Amended Complaint merely provided further
detail about the retaliation claim set forth in plaintiff's
original Complaint. Specifically, plaintiff's proposed Amended
Complaint stated: "Defendant Otero repetitively began to
criminally threaten to murder the plaintiff, have him murdered
if he could not personally accomplish this and proceeded to
verbally abuse and threaten the plaintiff after discovering the

plaintiff wrote defendant Bowles (the warden) informing him of his misconduct[.]" Id.

The Court subsequently granted plaintiff's Motion to Amend, in part, and appointed counsel for the limited purpose of filing a streamlined Amended Complaint. See Doc. #23. The Amended Complaint, filed on December 23, 2021, again brings a claim for retaliation. See Doc. #32 at 4-5. The retaliation claim in the Amended Complaint simply repeats the allegations raised in plaintiff's proposed Amended Complaint, and specifies that plaintiff's retaliation claim is brought under the First Amendment. See id. It does not state a new claim for retaliation.

Therefore, plaintiff's proposed Amended Complaint and Amended Complaint do not set forth any new retaliation claim. Rather, those complaints merely restate, and provide additional detail regarding, the retaliation claim plaintiff asserted in his original Complaint. Plaintiff brought his retaliation claim in his original Complaint. He was required to exhaust that claim before initiating this action. The undisputed facts establish that he did not do so. See Doc. #51-2 at 4; Doc. #56 at 4.

Moreover, even if plaintiff were correct that this claim was first raised in his Amended Complaint, defendant Otero would still be entitled to summary judgment. An amended pleading that

> asserts a claim that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading is regarded as relating back to the original complaint; that is, a claim in an amended complaint that functionally duplicates a claim in an original pleading is regarded as having been brought at the time of that original pleading.

Vann v. Fischer, No. 11CV01958(KPF), 2014 WL 4188077, at *22 (S.D.N.Y. Aug. 25, 2014) (citation and quotation marks omitted). Thus, where a claim set forth in an Amended Complaint arises from the same conduct, transaction, or occurrence set out in the original Complaint, such a claim is "'brought' for purposes of the PLRA when the original Complaint was filed[.]" Id.

Here, the retaliation claim in plaintiff's Amended Complaint relates to the claims in the original Complaint regarding Otero's "harassment" of plaintiff for complaining about him. Compare Doc. #1 at 7 with Doc. #32 at 4-5. The First Amendment retaliation claim brought in plaintiff's Amended Complaint therefore arose from the same conduct, transaction, or occurrence as the claims in the original Complaint. Thus, even assuming arguendo that plaintiff had not raised his First Amendment retaliation claim in his original Complaint, this claim would still be subject to dismissal for failure to exhaust because it was "'brought' for purposes of the PLRA when the

original Complaint was filed" on May 26, 2021. <u>Vann</u>, 2014 WL 4188077, at *22.[7]

In sum, plaintiff was required to completely exhaust his First Amendment retaliation claim prior to initiating this action on May 26, 2021. Plaintiff does not dispute defendant Otero's assertion that plaintiff did not completely exhaust his First Amendment retaliation claim until June 17, 2021. As a result, the undisputed evidence of record establishes that plaintiff failed to satisfy the PLRA's exhaustion requirement as to his First Amendment retaliation claim. Summary judgment is therefore **GRANTED** as to this claim.

Accordingly, plaintiff's First Amendment retaliation claim is dismissed, without prejudice to plaintiff bringing a new, separate civil action on that claim. <u>See</u> <u>Neal</u>, 267 F.3d at 123 ("We have recognized that failure to exhaust administrative remedies is usually a curable, procedural flaw that can be fixed

---

[7] Courts within the Second Circuit have recognized a narrow exception to the ordinary requirement that a plaintiff exhaust his claims prior to initiating an action where the plaintiff moves "for leave to supplement his pleading, pursuant to Rule 15(d), to set out any transaction, occurrence, or event that happens <u>after</u> the date of the pleading to be supplemented[.]" <u>Tolliver v. Malin</u>, No. 12CV00971(DAB)(KNF), 2014 WL 1378447, at *9 (S.D.N.Y. Apr. 4, 2014) (emphasis added). Such an exception is inapplicable here, because plaintiff does not assert that the events forming the basis of his First Amendment retaliation claim occurred <u>after</u> he filed his original Complaint.

by exhausting those remedies and then reinstituting the suit."
(citation and quotation marks omitted)).

V.   **CONCLUSION**

For the reasons set forth herein, the Court finds that
plaintiff has failed to produce evidence sufficient to support
his First Amendment retaliation claim, and that defendant
Otero's unrebutted evidence establishes that defendant Otero is
entitled to summary judgment on that claim.

Plaintiff's First Amendment retaliation claim is hereby
dismissed, without prejudice to plaintiff bringing a new,
separate civil action on that claim.

It is so ordered this 1st day of August, 2022, at
Bridgeport, Connecticut.

/s/
_____
HON. SARAH A. L. MERRIAM
UNITED STATES DISTRICT JUDGE
